


IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| KIPLAND KINKEL,<br><br>    Petitioner,<br><br>    v.<br><br>GARY LAWHEAD, Superintendent,<br>MacLaren Youth Correctional Facility,<br><br>    Defendant. | Case No. 03C-21079<br>Honorable Joseph C. Guimond<br><br><br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter came before the court and the Honorable Joseph C. Guimond for a trial on petitioner's Petition for Post-Conviction Relief on June 19, 2007 and June 20, 2007. Petitioner appeared through his attorneys, Lawrence Matasar and Dennis N. Balske, and defendant appeared through Assistant Attorneys General Susan G. Howe and Douglas Y.S. Park.

In this proceeding, petitioner contends that his convictions in Lane County Court Case No. 20-98-09574 are void, and the subsequent sentences invalid, in that the convictions were obtained in violation of his Oregon State and Federal Constitutional rights. In short, petitioner claims that: 1) he was mentally incompetent to aid and assist his attorneys at the time his guilty pleas were entered; 2) trial counsel provided constitutionally ineffective assistance of counsel by not requesting a competency examination prior to the pleas or objecting to the trial court's acceptance of the pleases without such examination; 3) since petitioner was mentally incompetent to enter his guilty plea, the trial court committed constitutional error by accepting

Page 1 – FINDINGS OF FACT AND CONCLUSIONS OF LAW
   DYP/TRIS8164.DOC                Department of Justice
                                    1162 Court Street NE
                                    Salem, OR 97301-4096
                                    (503) 378-6313

ER 22

the pleas. In resolving petitioner's claims, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Petitioner was convicted of four counts of murder and 26 counts of attempted murder, arising from the shooting of his parents subsequent shootings at Thurston High School in Springfield in May 1998.

2. Petitioner was 15 years old and a freshman at Thurston High School at the time he committed his crimes.

3. On May 20, 1998 petitioner was arrested at Thurston High School for possession of a handgun. He was released into his father's custody later that day. Shortly after petitioner and his father returned to their home, petitioner shot his father in the head with a rifle, killing him.

4. After killing his father, petitioner spoke on the telephone with several friends and with a teacher in an apparently normal manner and did not reveal what he had done.

5. When petitioner's mother came home later that afternoon, petitioner met her in the garage and shot her six times with a pistol, killing her.

6. The following morning, petitioner went to Thurston High School armed with three semi-automatic weapons. As he went toward the cafeteria, he warned one of the students whom he encountered to stay out of the cafeteria.

7. Petitioner then shot a different student in the head, killing him. He then shot and wounded two other students. Petitioner entered the cafeteria and began shooting, wounding almost two dozen students. He walked up to a student who was crawling under a table and shot him in the neck, killing him. He then tried to shoot another student in the head at point-blank range, but his weapon was empty. When petitioner stopped to access another weapon, several students attempted to subdue him. Petitioner pulled out another firearm and wounded one of the students who was trying to subdue him. Petitioner eventually was subdued, arrested, and transported to the police station. At the police station, petitioner attempted to attack a detective with a knife he had concealed on his person, and again was subdued.

8. On June 11, 1998, in *State v. Kinkel*, Lane County Court Case No. 20-98-09574, petitioner was indicted on four counts of Aggravated Murder, twenty-five counts of Attempted Aggravated Murder with a Firearm, six counts of Assault in the First Degree with a Firearm, eighteen counts of Assault in the Second Degree with a Firearm, one count of Aggravated Murder, and other felony offenses totaling fifty-eight criminal charges.

9. On September 24, 1999, pursuant to negotiations involving defense counsel, the Lane County District Attorneys Office, and Oregon Court of Appeals Judge David V. Brewer, petitioner pled guilty to four counts of murder, as lesser-included offenses of the aggravated murder charges, and received four concurrent 25-year prison sentences.

10. Petitioner also pled guilty to twenty five lesser counts of attempted murder involving his peers and no contest to the lesser count of attempted murder of Detective Warthen, with sentencing to be decided by the court.

11. On November 2, 1999, petitioner was sentenced by the Honorable Jack Mattison to a total term of imprisonment of 1,340 months.

12. Petitioner appealed sentence imposed by the trial court, but the sentence was affirmed by the Oregon Court of Appeals, and the Oregon Supreme Court denied review.

13. Petitioner then filed for post conviction relief based on numerous claims of ineffective assistance of counsel and trial court errors, as follows:

   a. Petitioner's trial counsel failed to request that the trial court order a mental examination to determine petitioner's competency to stand trial, his ability to aid and assist in his own defense, and his fitness to proceed by reason of incapacity due to a mental disease or defect. Had such an examination been obtained, it would have revealed that petitioner was mentally incompetent to stand trial, mentally unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, and mentally unable to knowingly, voluntarily and intelligently waive his constitutional rights. Effective trial counsel would have relied upon such examination and neither advised nor permitted petitioner to enter the guilty pleas which resulted in a 111 year sentence.

   b. Petitioner's trial counsel failed to object to the trial court's acceptance of the guilty plea and the trial court's plea colloquy with petitioner, which did not adequately determine whether petitioner's mental condition affected his ability to knowingly, voluntarily and intelligently waive his constitutional rights. Had trial counsel made such an objection, the trial court would have conducted a more extensive plea colloquy, which would have revealed that petitioner was suffering from paranoid schizophrenia, auditory hallucinations, and impaired neurologic function, such that the trial court would not have accepted the plea, and if the trial court had nonetheless accepted the plea, appellate counsel could have raised the trial court's acceptance of the plea on direct appeal.

   c. Petitioner's trial counsel failed to object to the trial court's acceptance of petitioner's plea without the knowing, voluntary, and intelligent consent and waiver, in writing and on the record, by petitioner's guardian *ad litem*, Claudia Jurowski. Had trial counsel made such an objection, the guardian *ad litem* would not have consented to the plea agreement, the trial court would not have accepted petitioner's plea, and if the trial court had nonetheless accepted the plea, appellate counsel could have raised the trial court's acceptance of the plea on direct appeal.

   d. Petitioner's trial counsel advised petitioner to accept a plea agreement in which petitioner gave up a substantial mental defense without receiving adequate consideration. Had trial counsel not advised petitioner to plead guilty, he would not have plead guilty.

   e. Petitioner's appellate counsel failed to raise as an error on appeal the trial court's failure to order a mental examination of petitioner, who was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense. Had appellate counsel raised such issues, the appellate courts would have reversed petitioner's conviction.

f.  Petitioner's appellate counsel failed to raise as an error on appeal the trial court's erroneous acceptance of the guilty plea and the trial court's insufficient plea colloquy with petitioner, which did not adequately determine whether petitioner's mental condition affected his ability to knowingly, voluntarily and intelligently waive his constitutional rights. Had appellate counsel raised such issues, the appellate courts would have reversed petitioner's conviction.

g.  Petitioner's appellate counsel failed to raise as an error on appeal the trial court's acceptance of petitioner's plea without the knowing, voluntary and intelligent consent and waiver, in writing and on the record, by petitioner's guardian *ad litem*, Claudia Jurowski. Had appellate counsel raised this issue, the appellate courts would have reversed petitioner's conviction.

h.  The trial court's failure to order a mental examination of petitioner, who was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his own defense, was a substantial denial in the proceedings resulting in petitioner's conviction in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, Sections 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Had the trial court ordered a mental examination of petitioner, the examination would have revealed that petitioner was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense. Had the trial court ordered a mental examination, the trial court would not have accepted petitioner's guilty plea.

i.  The trial court's acceptance of petitioner's guilty plea, when petitioner was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense was a substantial denial in the proceedings directly resulting in petitioner's conviction in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, Sections 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

j.  The trial court's plea colloquy, which directly resulted in petitioner's conviction, did not adequately determine whether petitioner's mental condition affected his ability to knowingly, voluntarily and intelligently waive his constitutional rights, and was a substantial denial in the proceedings in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, Sections 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Page 4 – FINDINGS OF FACT AND CONCLUSIONS OF LAW
DYP/TRIS8164.DOC    Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

ER 25

k. The trial court's acceptance of petitioner's guilty plea without first obtaining a knowing, voluntary, and intelligent waiver from the person whom the court had appointed as petitioner's guardian *ad litem* for this case, Claudia Jurowski, was a substantial denial in the proceedings resulting in petitioner's conviction in violation of petitioner's right to trial by jury, his right to confront accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article 1, §§ 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Had the trial court asked for the guardian *ad litem's* waiver before taking the plea, she would not have given it.

14. The State moved for summary judgment, which was granted in part and denied in part. Petitioner's remaining claims can be summarized as follows:

a. Petitioner's trial counsel failed to request that the trial court order a mental examination to determine petitioner's competency to stand trial, his ability to aid and assist in his own defense, and his fitness to proceed by reason of incapacity due to a mental disease or defect. Had such an examination been obtained, it would have revealed that petitioner was mentally incompetent to stand trial, mentally unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, and mentally unable to knowingly, voluntarily, and intelligently waive his constitutional rights. Effective counsel would have relied upon such examination and neither advised nor permitted petitioner to enter the guilty pleas which resulted in an 111 year prison sentence.

b. Petitioner's trial counsel failed to object to the trial court's acceptance of the guilty plea and the trial court's plea colloquy with petitioner, which did not adequately determine whether petitioner's mental condition affected his ability to knowingly, voluntarily, and intelligently waive his constitutional rights. Had trial counsel made such an objection, the trial court would have conducted a more extensive plea colloquy, which would have revealed that petitioner was suffering from paranoid schizophrenia, auditory hallucinations, and impaired neurologic function, such that the trial court would not have accepted petitioner's guilty plea, and if the trial court had nonetheless accepted the plea, appellate counsel could have raised the trial court's acceptance of the plea on direct appeal.

c. The trial court's acceptance of petitioner's guilty plea, when petitioner was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to a mental disease or defect, unable to knowingly, voluntarily, and intelligently waive his constitutional rights, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, and unable to participate in his defense was a substantial denial in the proceedings directly resulting in petitioner's conviction in violation of petitioner's right to trial by jury, his right to confront his accusers, his right against compulsory self-incrimination, his right to counsel, and his right to due process of law, under Article I, sections 11 and 12 of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Page 5 – FINDINGS OF FACT AND CONCLUSIONS OF LAW
DYP/TRIS8164.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

ER 26

15. Petitioner's post-conviction case proceed on the following three claims: 1) petitioner was mentally incompetent to aid and assist his attorneys at the time the guilty pleas were entered; 2) trial counsel should have been aware that petitioner was very likely mentally incompetent to enter the guilty pleas and failed their constitutional duty of effective assistance of counsel to petitioner by not requesting a competency hearing prior to the pleas or objecting to the trial court's acceptance of the pleas without such examination; and 3) since petitioner was mentally incompetent to enter his guilty pleas, the trial court committed constitutional error by accepting the pleas.

16. In support of petitioner's claim that he was mentally incompetent when he entered his plea, petitioner submitted numerous records from the Lane County Detention Center documenting his mental state leading up to his pleas.

17. Petitioner also presented the testimony of two experts in the field of child psychology, Dr. Bolstad and Dr. Sack, in support of his claims that he was unable to aid and assist and therefore mentally unable to knowingly and voluntary waive a constitutional right. Both of these experts had conducted an examination of petitioner to determine the possibility of an insanity defense.

18. Neither professional conducted a mental competency examination of petitioner, nor did either raise issues of petitioner's ability to aid and assist to his trial attorneys.

19. Both professionals last saw petitioner in May of 1999, some four months prior to the entry of his guilty pleas. Due to this gap in time, Dr. Bolstad testified that he could not be absolutely certain that petitioner was mentally incompetent and unable to enter his guilty plea but that he could state it was "highly probable" that this was the case.

20. Petitioner's experts based their opinion of whether petitioner could aid and assist at the time he entered his plea on the fact that petitioner was taken off his medication three months prior to his guilty plea and the fact that they believe the records of petitioner's treating doctor indicate that petitioner was mentally de-compensating prior to entering his plea.

21. Dr. Bolstad and Dr. Sack's determinations that petitioner was not mentally competent when he entered his pleas constitute theories that were contradicted by the weight of the evidence presented to the court.

22. The mere fact that a person suffers from a mental disease or defect does not make them incompetent to aid and assist their attorneys.

23. Prior to entering his pleas, petitioner was seen fourteen times by seven different mental health professionals, for the purpose of rendering an evaluation on a potential insanity defense. Throughout most of the defense evaluations, petitioner was not taking any psychotropic medication, at Dr. Bolstad's specific request.

24. It would have been professionally incumbent on mental health professionals to raise an aid and assist issue to trial counsel if they saw indications that one may be present.

25. None of the mental health professionals that evaluated petitioner indicated to anyone—including petitioner's trial counsel—that petitioner was not mentally competent and therefore could not aid and assist. This includes the two mental health professionals that evaluated petitioner closest in time to his pleas. Those who did comment on petitioner's competency, including Dr. Bolstad, opined to trial counsel that petitioner was legally competent.

26. Dr. Johnson evaluated petitioner less than two months prior to the entry of petitioner's plea. He testified he did not see any indications that petitioner was unable to aid and assist.

27. Dr. Park Dietz evaluated petitioner less than a month before he entered his plea and at that time Dr. Dietz believed petitioner was competent to aid and assist in his own defense. Dr. Dietz found that petitioner was alert and attentive, presented a demeanor that was consistent with the circumstances of the interview, responded appropriately to his questions, and was able to follow advice from his attorney.

28. The evaluations conducted by Dr. Dietz and Dr. Johnson occurred when petitioner was not taking any psychotropic medication.

29. The people that had direct contact with petitioner immediately prior to his plea were petitioner's trial counsel and Judge Mattison, the trial court judge, and his treating psychologist.

30. During his underlying criminal case, petitioner was represented by counsel that had experience in homicide cases. These attorneys, particularly Mr. Sabbit, had represented other defendants with significant mental health issues. Trial counsel found petitioner to be pleasant, bright, communicative, and significantly above average intelligence.

31. Trial counsel were well aware of petitioner's mental health issues.

32. In the fourteen months leading up to petitioner's plea, petitioner's counsel met with him on virtually a weekly basis and not once saw any indication that petitioner could not aid and assist in his own defense.

33. Trial counsel had no indications whatsoever that petitioner was unable to aid and assist them and fully participate in the entry of his guilty pleas. If either attorney had seen any evidence whatsoever pointing to petitioner's inability to proceed, they would have conducted a competency evaluation on their own or asked the court to order one.

34. Petitioner's guilty plea was entered after a lengthy plea colloquy with Judge Mattison. During petitioner's colloquy, Judge Mattison found petitioner to be competent to proceed with entering his guilty pleas. He also believed that there was no evidence that would have caused him to suspect Mr. Kinkel was incompetent to stand trial, unable to aid and assist in his own defense, unfit to proceed by reason of incapacity due to mental disease or defect, unable to understand the nature of the proceedings, unable to assist and cooperate with counsel, or unable to participate in his own defense. If Judge Mattison had any concerns about any of these issues, he would not have hesitated to stop the proceedings, inquire further into Mr. Kinkel's mental status, and, if warranted, order a mental examination to resolve concerns about Mr. Kinkel's competency.

35. During petitioner's deposition, petitioner indicated that he understood the plea process. He was able to clearly recall and understand the nature of the pleas he entered and the reasons why he and his attorneys chose to go the "plea route" rather than proceed to trial.

36. During his deposition, petitioner indicated that his problem with his plea was the fact that he thought he had a "good chance" of receiving 40 to 50 years and instead received nearly 112.

Page 7 – FINDINGS OF FACT AND CONCLUSIONS OF LAW
DYP/TRIS8164.DOC
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

ER 28

37. In petitioner's post trial memorandum, he states that the question of his mental competency is no longer relevant and abandons that argument in his discussion. In abandoning that argument, petitioner also abandoned his claim of trial court error and solely relies on his claims of inadequate assistance of counsel and a due process violation.

38. I also incorporate any other findings of fact included in my opinion letter of August 1, 2007 not specifically mentioned herein.

39. Any other findings of fact not otherwise specified are resolved in favor of defendant.

## CONCLUSIONS OF LAW

1. Petitioner was mentally competent to aid and assist at the time he entered his guilty pleas. Therefore, entry of his pleas did not violate his due process rights under the United States Constitution, the standard for mental competency articulated in *Dusky v. United States* 362 U.S. 402 (1960), ORS 161.360, or the Constitution of the State of Oregon.

2. In the underlying criminal proceeding resulting in petitioner's conviction, petitioner was not denied the right to effective assistance of counsel guaranteed by either the United States Constitution, as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

3. In the underlying criminal proceeding resulting in petitioner's conviction, the trial court did not err when it accepted petitioner's pleas. Therefore, petitioner's right to due process was not violated under the United States Constitution, the standard articulated in *Pate v. Robinson*, 383 U.S. 375 (1966), the standard articulated in *Brady v. Calloway*, 11 Or App 30 (1972), or the Constitution of the State of Oregon.

4. I also incorporate any other conclusions of law included in my opinion letter of August 1, 2007 not specifically mentioned herein.

5. Any other conclusions of law not otherwise specified are resolved in favor of defendant.

DATED this 2 day of October, 2008

Joseph C. Guimond
Circuit Court Judge

Submitted by: Douglas Y.S. Park & Susan Howe
Senior Assistant Attorneys General
Of Attorneys for Defendant

Page 8 – FINDINGS OF FACT AND CONCLUSIONS OF LAW
DYP/TRIS8164.DOC

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-6313

ER 29